UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MICHAEL D.  FERGUSON,    )
    Petitioner,    )
         )
v.          )   NO.  2:04-CR-04
         )   NO.  2:09-CV-246
UNITED STATES OF AMERICA,  )
    Respondent.    )

## MEMORANDUM OPINION AND ORDER

Michael D. Ferguson ("Ferguson" or "petitioner"), a federal prisoner, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 115]. The United States has responded in opposition, [Doc. 122], and the petitioner has replied to the government's opposition, [Doc. 126]. The Court has determined that the motion and the files and records of the prior proceedings conclusively establish that petitioner is not entitled to relief on all grounds, except for his claim that he received erroneous advice from counsel, further confirmed by misstatements by the Court itself, about his maximum possible sentence, leading him to enter an unknowing and involuntary guilty plea, and that, as to these claims, no evidentiary hearing is required.

For the reasons which follow then, the motion will be DENIED and the petition dismissed as to these claims. As to the remaining claim, the Court has concluded that an evidentiary hearing is warranted, that counsel should be appointed under 18 U.S.C. § 3006A, and a hearing held as soon as practicable after giving the attorney adequate time to investigate and prepare. Further, pursuant to 28 U.S.C. § 636(b), the Court refers the remaining claim to Chief United States Magistrate Judge Dennis H. Inman to appoint counsel, conduct the necessary hearing, and make proposed findings of fact and recommendations for disposition.

# I. Procedural and Factual Background

Ferguson was arrested and charged pursuant to a criminal complaint on January 21, 2004, [Doc. 1]. He was subsequently indicted by the federal grand jury on January 27, 2004, and charged, in a four count indictment, with possession, receipt, production and distribution of child pornography, [Doc. 9]. He made an initial appearance and was arraigned on the indictment on January 30, 2004. Ferguson was advised by the Magistrate Judge at the January 30 proceeding of each of the charges against him and advised of the potential penalties. On September 1, 2004, a proposed Rule 11(c)(1)(C) plea agreement was filed in which Ferguson and the government agreed that Ferguson would receive a sentence of one hundred forty four (144) months imprisonment upon his guilty plea to the offenses of receipt and production of child pornography, [Doc. 31, 39].

Although the parties agreed in the plea agreement that the appropriate sentence in the case was 144 months, the plea agreement also set out the maximum and minimum terms of imprisonment for each count. The plea agreement provided that for Count One of the indictment (violation of 18 U.S.C. § 2251(a) and (d)) there was a maximum penalty "of imprisonment for not less [sic] 10 years no [sic] more than 20 years" and for Count Three (violation of 18 U.S.C. § 2252A(a)(2) and (b)(1)) "of imprisonment for not less than five nor more than 20 years." [Doc. 39, ¶ 2]. During the change of plea hearing on October 25, 2004, Ferguson was likewise advised as to the maximum penalties provided for by law and the relevant mandatory minimum sentence provided by law for each count, consistent with the language of his plea agreement, [Doc. 104, Tr. of Proc., at 10]. Ferguson was also orally advised by the Court that the plea agreement was offered pursuant to Rule 11(c)(1)(C) and that, if accepted, would require the Court to impose the agreed upon sentence of 144 months, [*Id*. at 13]. Ferguson's guilty pleas were accepted, the plea agreement was taken under advisement,

and a presentence investigation report ("PSR") was ordered, [Doc. 43]. On March 7, 2005, the Court rejected Ferguson's plea agreement and established a deadline of March 21, 2005, for Ferguson to file a motion to withdraw his guilty plea, [Doc. 52]. On March 21, 2005, Ferguson withdrew his guilty plea and pled guilty to the same charges pursuant to a new Rule 11(c)(1)(A) plea agreement, [Docs. 56, 57].

Under the terms of the new plea agreement, the parties agreed that the Court was authorized to "impose any lawful term of imprisonment up to the statutory maximum." [Doc. 57, ¶ 1(a)]. The plea agreement further provided that the maximum penalty for Count One was "imprisonment for not less [sic] ten years nor more than twenty years" and for Count Three "of imprisonment for not less than five years nor more than twenty years." [*Id.* at ¶ 2]. During the change of plea colloquy, Ferguson was advised of the minimum and maximum statutorily authorized sentences for each count. [106 Tr. of Proc., at 16]. Later in the colloquy, the Court also asked the petitioner if he understood that the Court "could impose a sentence of up to 20 years imprisonment" in the case. [*Id.* at 19].[1] Ferguson responded that he did.

The probation officer in the PSR originally determined a guidelines range for imprisonment of 235 to 293 months, which was described by petitioner's counsel in his sentencing memorandum as being "only five months below the statutory maximum [on the bottom end]" and "53 months above the statutory maximum [on the top end]" [Doc. 76, at 2]. A revised PSR established a Guidelines range of 324 to 405 months of imprisonment. Ferguson's objections to the revised PSR were overruled and he was sentenced on August 25, 2005, to 300 months of imprisonment (240

---

[1] The Court did not specifically clarify that it had the authority to impose 20 years imprisonment on each count or that the sentence could be imposed consecutively.

months on Count One and 60 months on Count Three, with the terms of imprisonment to run consecutively), [Doc. 88]. Judgment was entered on September 8, 2005, [Doc. 90].

Ferguson filed a notice of appeal on September 12, 2005, [Doc. 91]. The Sixth Circuit Court of Appeals affirmed Ferguson's conviction and sentence on June 20, 2008, [Doc. 111], and Ferguson's subsequent petition for writ of certiorari to the United States Supreme Court was denied on November 17, 2008, [Doc. 114]. The instant § 2255 petition was then timely filed on November 4, 2009, [Doc. 115].

The factual basis for the guilty pleas was set out in a stipulation of facts as follows:

> Operation Hamlet was a multi-jurisdictional federal investigation of an international ring of child pornographers who have conspired to sexually exploit children in furtherance of their own sexual gratification and profit. Two main subjects of the investigation were Lloyd Emmerson from Clovis, California, and Joseph Durborow, of Orem, Utah. Both have been identified as manufacturers and distributors of child pornography via the internet. The subjects' computers were seized as part of the investigation and a forensic analysis was completed on both in 2002. Among the photos found in both Emmerson and Durborow's possesssion were numerous photographs of a "minor female child" that had been taken and distributed by an individual who identified himself in computer chats and e-mails as "Ratboy." Two of the photographs of the "minor female child" were pornographic. These images were transported and shipped via internet by "Ratboy" between September 13, 1999 and January , 2002 to the other subjects. Through forensic examination of Duborow's computer, it was determined that Duborow traded minor female children with "Ratboy" who in turn provided photographs of the "minor female child" to Duborow. Eventually investigators were able to determine the IP network address that was used to send the e-mails and pictures. It was registered to Michael D. Ferguson, age 40, of 1101 Idlewylde Circle, in Johnson City, Tennessee. On January 21, 2004, Ferguson consented to a search for child pornography and related materials at his residence. U.S. Immigration and Customs Enforcement agents found and seized a computer and a large quantity of media storage devices along with video tapes. A large quantity of child pornography as defined in 18 U.S.C. § 2256(8), including pictures of

4

the "minor female child" and other prepubescent children were taken as evidence. The agents also discovered a number of video tapes showing Ferguson having sex with the "female child" who had reached the age of 18. The e-mails and photographs from "Ratboy" that were found during the Operation Hamlet investigation were also discovered in his media storage devices.

Ferguson was advised of his rights and gave a statement to the agents admitting is guilt in the production, receipt, transportation and possession of child pornography. He admitted there was child pornography on the computer, primarily downloaded from newsgroups". He said downloading and saving child pornography was something he did every day. He admitted prior contact with Durborow and Emmerson and confirmed the earlier e-mails and transmission of photographs of the "minor female child". He had known her since she was 8 and had used a digital camera to photograph her at his residence then send the photos and the two sexually explicit photos. He admitted that he and the "minor female child" began having sexual intercourse in 2002 when she was fifteen. He had videotaped numerous sexual encounters with her and saved the videos. The "minor female child" was also interviewed. She was born on April 21, 1987 and had known Ferguson since she was 8 years old. Prior to becoming sexually intimate with him there had been a period of time in which he would "touch" her. She acknowledged Ferguson would videotape them having sex. She said she would "sometimes" consent to sex. Often Ferguson would talk her into it, sometimes he would buy her things or would provide her with alcohol before sex. She said that most of the time she had sex with Ferguson, she was intoxicated. She identified the photographs found in the possession of Durborow were of her and had been taken by Ferguson.

[Doc. 40].

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, ..." 28 U.S.C. § 2255.

5

Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a

6

petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

The Sixth Amendment provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland* 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F. 2d 1073, 1081 (3d Cir. 1985). In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S.

7

365, 381 (1986).

The second prong of the *Strickland* test requires that the petitioner show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized that both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## IV. Analysis and Discussion

Petitioner raises several claims in his § 2255 motion: (1) involuntary guilty plea due to Rule 11 violation regarding maximum sentence; (2) ineffective assistance of counsel for failure to object to Rule 11 violation in the district court resulting in an involuntary guilty plea; (3) ineffective assistance of appellate counsel for failing to raise Rule 11 issue on direct appeal; (4) ineffective assistance of counsel for failing to raise the correct double counting issue in the district court or on

8

direct appeal; (5) ineffective assistance of counsel for failing to raise a commerce clause challenge to the enhancements in the district court or on direct appeal; (6) prosecutorial misconduct for knowingly making misleading and false statements in the district court and on direct appeal; and (7) ineffective assistance of counsel for failing to object to the prosecutor's false claims and misleading statements.

### A. Rule 11 Violation – Maximum Sentence (Claims 1, 2 and 3)

Petitioner claims that he was not advised, as required by Rule 11, of the maximum sentence he could receive in the case and "had [he] known the true maximum punishment he faced, he would not have plead [sic] guilty" but would have gone to trial. [Doc. 116 at 1]. More specifically, he claims that he entered his guilty plea based on an incorrect understanding that he faced a maximum 20 year sentence and was informed by counsel that his sentencing as to Counts One and Three would be concurrent sentencing. He further claims that his understanding that sentences would not be consecutive was confirmed by statements of both his attorney and the Court.

Ferguson acknowledges that he was aware that he was pleading guilty to multiple counts; however, he claims that he "had been informed by counsel that counts are grouped together and are concurrent." He further claims that "[n]o one explained the concept of consecutive sentences to achieve, 'Total punishment'". [Doc. 116 at 3]. Ferguson alleges that, had he known that his sentencing could be consecutive and that his actual maximum sentence was 40 years, not 20, "he would have exercised his Sixth Amendment right to a trial."

Throughout his memorandum, Ferguson cites various cases for the proposition that knowledge of the maximum potential sentence is critical if the plea is to be voluntary and that affirmative misstatement of the actual penalty is a Rule 11 violation of a fundamental nature. He

cites, for example, *Triggs v. United States*, 437 F.2d 1201, 1202 (6th Cir. 1971) (voluntariness of guilty plea is not satisfied if entered by one who is not fully aware "of what sentences could be administered by plea entered"); *Pitts v. United States*, 763 F.2d 197 (6th Cir. 1985) (court's misstatement of the actual penalty faced is likely to cause a defendant to underestimate significantly the sentence he would receive by pleading guilty, violating due process); *United States v. Morris*, 470 F.3d 596 (6th Cir. 2006) (one of the court's responsibilities during a Rule 11 plea colloquy is to be absolutely sure a defendant understands what punishment could result from his guilty plea); *United States v. Pellerito*, 878 F.2d 1535 (1st Cir. 1989 ) (defendant's understanding of his possible maximum sentence is often the deciding factor as to whether to plead guilty or use his Sixth Amendment right to trial). As far as this goes, petitioner correctly states the law.

For a guilty plea to be voluntary, the defendant should be made aware of the maximum sentence. *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). Before accepting a guilty plea, the Federal Rules of Criminal Procedure require the court to inform a defendant of "any mandatory minimum penalty" and "the maximum possible penalty . . ." Fed. R. Crim. P. 11(b)(1)(H) and (I). The purpose of the Rule is "to ensure that the defendant is not induced to change his plea because of a totally unrealistic expectation as to how mild a sentence he might receive." *Williams v. United States*, 47 Fed. App'x 363, 366 (6th Cir. 2002) (quoting *United States v. McDonald*, 121 F.3d 7, 11-12 (1st Cir. 1997)). "The mere fact that the defendant does not know at the time of his guilty plea, the exact sentence that he will receive does not [necessarily] mean that the plea was entered into unknowingly." *Id*. at 367 (quoting *United States v. Malcom*, 114 F.3d 1190, 1997 WL 311416, at * 7 (6th Cir. 1997) (unpublished) (citing *United States v. Stephens*, 906 F.2d 251, 254 (6th Cir. 1990)). Even if misinformed, however, about the maximum possible sentence, a defendant's plea

is not to be set aside as involuntary if he receives a sentence less than the law permitted or less than the defendant was informed the court could impose. *United States v. Foreman*, 894 F.2d 1337 (Table), 1990 WL 7944 (6th Cir. 1990) (citing *United States v. Woodall*, 438 F.2d 1317, 1328-29 (5th Cir. 1970), *cert. denied*, 403 U.S. 933 (1971)).

It appears, however, that Rule 11 does not require an instruction on consecutively sentenced counts. *See United States v. Castillo*, 427 Fed. App'x 748, 749, 2011 WL 2014943 (11th Cir. 2011) (citing *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999) (holding that the district court's alleged error in failing to inform the defendant that his sentences must run consecutively is an error that is neither "obvious" nor "clear under current law")). In fact, in *Humphrey*, the Eleventh Circuit basically accepted the argument that the requirements of Rule 11 are met by informing the defendant of the minimum and maximum penalties for each count and that nothing in Rule 11 explicitly requires informing a defendant about the possibility of consecutive sentencing for multiple offenses. *Id.* at 587 (applying plain error review). In *Humphrey*, the Eleventh Circuit notes that a number of other circuits agree with the general proposition that Rule 11 does not require that the court explicitly inform a defendant about the possibility of consecutive sentencing, citing *United States v. Saldana*, 505 F.2d 628 (5th Cir. 1974) (no violation of Rule 11 when district court fails to tell defendant that sentence about to be imposed would be consecutive to sentence he was already serving); *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996) (no requirement to tell defendant about mandatory consecutive sentences and holding that court's warning that defendant was subject to a possible 15-year sentence as to each of two counts "implicitly" alerted the defendant to the possibility of consecutive sentencing); *Faulisi v. Daggett*, 527 F.2d 305, 309 (7th Cir. 1975) (no requirement to tell defendant that federal sentence may, at district court's discretion, run

consecutively to state sentence); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir.1973) (no requirement to inform defendant that multiple sentences might, at discretion of district court, be served consecutively); *United States v. Vermeulen*, 436 F.2d 72, 75 (2d Cir. 1970) (same).

Since the *Humphrey* decision other circuits are also part of the parade. *See United States v. General*, 278 F.3d 389, 395 (4th Cir. 2002) ("Rule 11, however, does not require a district court to inform the defendant of mandatory consecutive sentencing."), *cert. denied*, 536 U.S. 950 (2002); *United States v. Morgan-Garcia*, 69 F.3d 535, 1995 WL 625419 (5th Cir. 1995) ("Rule 11 of the Federal Rules of Criminal Procedure does not require the district court to advise defendants that they may receive consecutive sentences."); *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987) ("The trial court need not inform the defendant that the sentences to each count may run consecutively.")[2]; *Wall v. United States*, 500 F.2d 38, 39 (10th Cir. 1974) (no requirement to tell defendant about possible consecutive sentences).

More important to this Court than what other circuits have said, however, is what the Sixth Circuit has said. In *United States v. Ospina*, the Sixth Circuit, while acknowledging that Rule 11 requires the court to inform a defendant of the maximum possible penalty, stated unequivocally "that there is no requirement in Fed. R. Crim. P. 11 that the court explicitly admonish a defendant that a sentence may be imposed consecutively." 18 F.3d 1332, 1334 (6th Cir. 1994) (citing *Paradiso v. United States*, 482 F.2d 409 (3d Cir. 1973)). In *Ospina*, the district court advised the defendant that it could order the service of a five year mandatory minimum sentence consecutively but did not advise the defendant that it was consecutive by statute. Furthermore, the Sixth Circuit noted that

---

[2] *See,* however, *United States v. Neely*, 38 F.3d 458, 460 (9th Cir. 1994) (Defendant must be told that his federal sentence must run consecutively to state sentence).

even if it were inclined to agree that the district court must advise the defendant of consecutive sentencing, Rule 11(h) provides that a variation from its procedures shall be disregarded unless it affects a substantial right. *Id.* (citing *United States v. Williams*, 899 F.2d 1526 (6th Cir. 1990) (holding failure to tell defendant during plea hearing that supervised release was mandatory constituted harmless error because notice of supervised released contained in plea agreement and defendant did not claim lack of knowledge of requirement)).

This case is somewhat different from the situation in *Ospina*, however, because, in that case, the district court had in fact advised the defendant during the Rule 11 colloquy that it could order the sentence to be served consecutively and thus the defendant knew of the possibility. In addition, the court noted that the presentence report reflected the reality of consecutive sentencing and Ospina did not object to that portion of the report. The combination of these facts led the Sixth Circuit to find that even if the district court was required to advise the defendant of the possibility of consecutive sentencing, the error was harmless where the defendant knew that the sentences would be served consecutively. The Sixth Circuit reiterated a similar holding in *United States v. Williams, supra*, where the defendant became aware of counsel's error on the maximum sentence when he received the presentence report and yet did not move to withdraw his plea. While not finding the failure to move to withdraw the plea to be determinative, the Sixth Circuit did find that where there is a failure to do so, "a defendant faces a high hurdle on appeal." *Williams*, 47 Fed. App'x at 369 (internal quotation marks omitted).

The question of whether an evidentiary hearing is warranted on Ferguson's claims related to the voluntariness of his guilty pleas is a close one. The Court clearly was under no obligation under the provisions of Rule 11 to advise Ferguson of the possibility that his sentences could be

13

ordered to be served consecutively to each other. The Court advised Ferguson on two separate

occasions, during both plea colloquies, that each of Counts One and Three carried a maximum term

of 20 years of imprisonment, implicitly advising him that his total sentencing exposure was 40 years.

His plea agreements, which he acknowledged under oath having read and reviewed with his

attorney, likewise set out that the maximum sentence for each of the two counts was 20 years. But

for his claim, therefore, that counsel specifically advised him that his sentences would be concurrent,

the voluntariness of Ferguson's guilty pleas would not likely be implicated. In addition, the Court's

two misstatements during its hearing on whether to accept the Rule 11(c)(1)(C) plea agreement and

during Ferguson's second plea colloquy, would not likely change that result. [3]

The real questions then are two– (1) Did trial counsel erroneously inform Ferguson that his

maximum sentencing exposure as to Counts One and Three was a total of 20 years because the

sentences would be served concurrently to each other, thus resulting in an unknowing and

involuntary plea?, and (2) even if, there was a Rule 11 violation was any error by counsel (and the

Court) harmless because Ferguson knew, based on the unobjected to content of the PSR, which did

not lead him to move to withdraw his guilty pleas, of the possibility of consecutive sentencing? [4]

---

[3] During the hearing on March 7, 2005, concerning the Court's acceptance or rejection of the Rule 11(c)(1)(C) plea agreement, the Court made an observation that the Guideline range established by the PSR of 235 to 294 months "would be capped at 240 months under the plea agreement." [Doc. 105, Tr. of Proc., at 2]. The Court also noted during the same hearing "that there is a difference between the statutory maximum of 20 years and the agreed upon sentence of 8 years." [Id. at 37]. Finally, the Court stated during the March 21, 2005 change of plea hearing: "Do you understand, Mr Ferguson, that I could impose a sentence up to 20 years of imprisonment in this case?" [Doc. 106, Tr. of Proc., at 19].

[4] The Court notes that Ferguson was asked at the sentencing hearing if he had received a copy of the PSR and had "ample opportunity to review [it] with [counsel]" and he answered affirmatively. [Doc. 102, Tr. of Sent. Hrg., at 67]. In addition Ferguson was given an opportunity to speak at the sentencing hearing and he declined his opportunity to allocute and made no objection to the imposition of consecutive sentences. Not only that, at the end of the sentencing hearing, after actually imposing a consecutive sentence, the Court asked if there was any objection. Ferguson was silent; his attorney answered "No, sir."

14

Although it is highly unlikely that the well experienced federal defender who represented Ferguson in fact advised him that the sentences on Counts One and Three would be concurrent, the Court cannot assume that and the matter needs to be addressed at an evidentiary hearing.

### B.    Double Counting (Issue 4)

Petitioner, through counsel, made several objections to the calculations of the Guidelines range by the probation officer in the PSR. Specifically, petitioner, through counsel, objected to a five level enhancement pursuant to USSG § 2G2.2(b)(4) because petitioner engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, [PSR, ¶ 35].

Ferguson was charged and convicted in Count One of using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction (photograph and image) of such conduct. 18 U.S.C. § 2251(a). Section 2G2.2(b)(4) of the Guidelines[5] provides for a five level increase in the offense level "[i]f the defendant engaged in a pattern of activity involving sexual abuse or exploitation of a minor." A "'pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct." USSG § 2G2.2, comment. n.1 (Nov. 2003).

Ferguson argued that Count One of the indictment involved the sexual exploitation of a minor and that such conduct was already built into the base offense level for Count One. He argued, therefore, that the application of the enhancement constituted impermissible double counting. The Court overruled petitioner's objection and the Sixth Circuit affirmed on appeal, holding that

---

[5]    2003 version.

conviction for Count One and the § 2G2.2(b)(4) enhancement "required materially different elements; thus, double counting did not occur."

Ferguson now says that he "agrees with the court's explanation," but argues that counsel was ineffective for failing to raise "the correct double counting issue." Had he done so, petitioner asserts, "the outcome would have been different." Ferguson claims that double counting actually occurred when the five level enhancement of USSG § 2G2.2(b)(2)(B) was applied. [PSR, ¶ 33]. Section (b)(2)(B) provides for a five level increase in the offense level if the offense involved distribution for the receipt of a thing of value. Petitioner reasons that both the offense of conviction and the (b)(2)(B) enhancement involved distribution and he is, therefore, being punished "twice for the exact same conduct." [6]

The government responds that no double counting occurred here because petitioner's conviction for Count One and the § 2G2.2(b)(2)(B) enhancement require materially distinct elements. The government is correct. Double counting "occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways." *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 2000). Even accepting the premise of Ferguson's argument as correct, i.e., that both Count One and § (b)(2)(B) require proof of distribution, the enhancement requires more-- distribution "for the receipt of a thing of value," something that Count One does not require. Thus,

---

[6] Petitioner labels this as a double jeopardy issue and a violation of his Fifth Amendment rights. However, as the government responds, petitioner confuses the concepts of double jeopardy and double counting. Double jeopardy refers to the imposition of multiple punishments for the same offense, while double counting refers to multiple Guidelines enhancements for the same conduct. No double jeopardy occurred here since petitioner received only one sentence (punishment) for each count of conviction. *See United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003) (explaining that "although the Constitution prohibits multiple criminal punishments for the same offense, double jeopardy principles generally have no application in the sentencing context because the determinations at issue do not place a defendant in jeopardy for an offense").

conviction for Count One and the § (b)(2)(B) enhancement require materially distinct elements. Given the lack of merit in petitioner's position, counsel was not deficient in failing to raise the issue.

### C. Commerce Clause Challenge (Issue 5)

Petitioner's convoluted statement of this claim is difficult to understand. Ferguson pled guilty to Count Three of the indictment which charged him with receiving child pornography transported in interstate commerce in violation of 18 U.S.C. § 2252A. In essence, the petitioner appears to argue that counsel was somehow deficient because the government was not required to prove that there was an actual nexus to interstate commerce because "the government [was never required] to prove the actual reception of the disputed images." He further makes the somewhat incomprehensible argument that simply because the pornographic images were possessed does not mean that they had traveled in interstate commerce.

First of all, to the extent Ferguson is now arguing that the evidence was insufficient to support his conviction as to Count Three, he cannot raise that issue. By pleading guilty, petitioner waived his right to challenge the sufficiency of the evidence. *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008). The rule is the same even where petitioner attempts to phrase his challenge as a jurisdictional question. *See United States v. Turner*, 272 F.3d 380, 389-90 (6th Cir. 2001). Here, Ferguson specifically admitted that he had received child pornography on the computer "primarily downloaded from news groups." He further admitted that "downloading and saving child pornography was something that he did most everyday." He affirmatively indicated to the Court, under oath, that he was offering to plead guilty to the offense set forth in Count Three because he was in fact guilty of the offense and he also acknowledged during the plea colloquy that he was "giving up the right . . . to require the United States to prove [him] guilty beyond a reasonable

17

doubt." As the government argues, Ferguson was in the best position to determine whether he was actually guilty of the offenses to which he pled guilty and possessed superior knowledge regarding his actual offenses. *See United States v. Socolovitch*, 340 Fed. App'x 291, 296 (6th Cir. 2009). Under these circumstances, Ferguson cannot show any deficient performance on the part of counsel and he does not allege any specific acts which counsel could have taken to either dissuade him from pleading guilty or that, had he insisted on going to trial, the outcome would have been any different. Importantly, Ferguson does not argue that evidence of his receipt of pornographic images in interstate commerce does not exist; he complains only that the government was not required to prove such receipt.

Petitioner's citation to *United States v. Schaefer*, 501 F.3d 1197 (10th Cir. 2007) may shed some light on the true nature of his claim. In *Schaefer*, a three judge panel of the Tenth Circuit Court of Appeals held that the government had failed to prove the interstate elements of Schaefer's crimes, thereby stripping the federal government of its jurisdiction over the case. *Schaefer*, 501 F.3d at 1198. More specifically, the Tenth Circuit panel held that internet use alone, without any other evidence, is insufficient to prove a nexus to interstate commerce. *Id.* at 1200, 1204. To the extent Ferguson claims deficient performance by counsel's failure to raise the issue raised in *Schaefer*, his argument fails for several reasons. First of all, *Schaefer* had not been decided at the time of the entry of Ferguson's guilty pleas and counsel cannot be faulted for failing to anticipate a decision by the Tenth Circuit. Secondly, the *en banc* Tenth Circuit has now overruled *United States v. Schaefer*. *See United States v. Sturm*, 672 F.3d 891 (10th Cir. 2012) (holding that the government need only prove that the visual depiction "has been" mailed, shipped, or transported in interstate commerce at any time and rejecting the defendant's argument that the government must prove exactly how

18

digital files came into the possession of the defendant). Finally, and more importantly, the Tenth Circuit decision in *Schaefer* has been rejected by every other circuit which has considered the question, including the Sixth Circuit. Indeed, the Sixth Circuit characterized the *Schaefer* decision as follows: "*Schaefer* stands alone and has been rejected by every court that has considered the issue." *See United States v. Mellies,* 329 Fed. App'x 592, 605 (6th Cir. 2009) (collecting cases). *See also United States v. Fuller*, 77 Fed. App'x 371, 378 (6th Cir. 2003) (finding interstate commerce connection by indisputable evidence that defendant used the internet, a means of interstate commerce, in committing the offense.)

### D. Prosecutorial Misconduct (Issues 6 and 7)

In these two claims, the petitioner presents a rambling dissertation of what he claims is misconduct by the government in the case through its use of "false inferences and materially untrue statements, both in District Court and in their reply brief to the Sixth Circuit direct appeal." Overall, petitioner's claims seem to indicate an apparent misconception on his part that the United States would be entitled only to argue those facts which had been stipulated to by the parties in the agreed factual basis at the time of sentencing and he complains that, had he known "that the facts of the case were allowed to change depending on the government's need, he would not have pled guilty."

At the time of the entry of Ferguson's guilty pleas, he acknowledged that he had discussed with his attorney how the guidelines might apply to his case, that he would have an opportunity to object to any of the facts and conclusions contained in the PSR, and that he was aware of the Court's authority to impose a sentence that was more severe than the one called for in the Guidelines. As the government points out, there is nothing impermissible about a district court enhancing a sentence based on facts that were never charged in the indictment, never admitted by the defendant, and never

found by a jury. *United States v. Conner*, 306 Fed. App'x 978, 982 (6th Cir. 2009) (labeling as "clearly unavailing" the argument that it is unfair to enhance a sentence based on such facts). That petitioner understood that the Court would consider other facts in determining his advisory guideline range in the case is clearly illustrated by the significant contest raised by petitioner's attorney as to the various Guidelines enhancements applied. In reality, petitioner's argument seems to be that, since the Court considered facts beyond those specifically admitted by the petitioner, such evidence somehow constitutes "false inferences, misleading facts, and outright fabrications." He offers nothing to suggest that the government knowingly used false or fabricated evidence or misled the court in any way. Once again, counsel was not deficient for failing to object to the various characterizations of the evidence by the government. This issue lacks merit.

## IV.    Conclusion

For the reasons set forth above, the Court will grant an evidentiary hearing with respect to petitioner's claim that his guilty pleas were involuntary and unknowing as a result of his alleged misunderstanding of the statutory maximum which could be imposed in this case. The matter is referred  to Chief United States Magistrate Judge, Dennis H. Inman, to conduct an appropriate evidentiary hearing, to order Ferguson's return to the district for the hearing,  to appoint counsel and make recommended  findings of fact and conclusions of law. Once the Magistrate Judge's report and recommendation have been filed, a separate order will enter with respect to that issue.

For the reasons set forth herein, petitioner's § 2255 motion lacks merit as to all issues except for the one referred to the Magistrate Judge and petitioner's motion will be DISMISSED as to those claims. The Court will reserve decision on the remaining claim raised by petitioner until after an evidentiary hearing is held and the report and recommendation of the Magistrate Judge is received.

If necessary, the Court will then address whether petitioner should be granted a certificate of appealability on any issued raised in this case and will enter an appropriate judgment.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE